LENTON CREDELLE BROWN, Administrator of the Estate of CLAMON BROWN v. KINDRED NURSING CENTERS EAST, L.L.C.; KINDRED HEALTH CARE OPERATING, INC.; KINDRED HEALTH CARE, INC.; PATRICIA EVELYN DIX, N.P.; STEVEN FERGUSON, M.D.; AND EASTERN CAROLINA FAMILY PRACTICE, P.A.

No. 227A09

(Filed 15 April 2010)

**Medical Malpractice— Rule 9(j) certification—extension of time—only for filing complaint**

The complaint of a plaintiff who did not follow the special pleading requirements of N.C.G.S. § 1A-1, Rule 9(j) was properly dismissed by the trial court, and the Court of Appeals was reversed, where plaintiff filed a complaint five days before the

BROWN v. KINDRED NURSING CTRS. E., L.L.C.

[364 N.C. 76 (2010)]

statute of limitations expired and then moved for an extension to file the 9(j) statement. Even though the limitations period can be extended for 120 days under Rule 9(j), this extension is for the limited purpose of filing a complaint; there is no language indicating that the time period can also be used to locate a certifying expert, add new defendants, and amend a defective pleading, as plaintiff did here.

Justice HUDSON dissenting.

Chief Justice PARKER and Justice TIMMONS-GOODSON join in this dissenting opinion.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 196 N.C. App. ——, 675 S.E.2d 687 (2009), reversing an order entered on 10 March 2008 by Judge Cy A. Grant, Sr. in Superior Court, Hertford County dismissing plaintiff's complaint. On 27 August 2009, the Supreme Court allowed defendants' petition for discretionary review of additional issues. Heard in the Supreme Court 16 November 2009.

*Gugenheim Law Offices, P.C., by Stephen J. Gugenheim, for plaintiff-appellee.*

*Harris, Creech, Ward and Blackerby, P.A., by Thomas E. Harris, W. Gregory Merritt, and Jay C. Salsman, for defendant-appellants Patricia Evelyn Dix, N.P., Steven Ferguson, M.D., and Eastern Carolina Family Practice, P.A.*

BRADY, Justice.

This case presents the question whether a complaint alleging medical malpractice may be amended after the expiration of the two-year statute of limitations to include an expert certification as required by North Carolina Rule of Civil Procedure 9(j) (Rule 9(j)). We have previously held that "[a]llowing a plaintiff to file a medical malpractice complaint and to then wait until after the filing to have the allegations reviewed by an expert would pervert the purpose of Rule 9(j)." *Thigpen v. Ngo*, 355 N.C. 198, 204, 558 S.E.2d 162, 166-67 (2002). Because our decision in *Thigpen* controls this case, we reverse the decision of the Court of Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

On 29 March 2006, nearly two years after his father passed away on 3 April 2004, plaintiff Lenton Brown commenced a *pro se* civil

action as administrator of his father's estate. In the complaint plaintiff alleged negligence, wrongful death, and medical malpractice against the following parties: Guardian Care of Ahoskie; Steve Jones, as Administrator of Guardian Care of Ahoskie; Kindred Hospitals East, L.L.C.; Kindred Nursing Centers East, L.L.C.; Ventas, Inc.; and Dr. Steven Ferguson.

Though plaintiff's complaint alleged medical malpractice, it failed to comply with the special pleading requirements of Rule 9(j). Under Rule 9(j), a pleading alleging medical malpractice "shall be dismissed" unless it "specifically asserts that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness . . . and who is willing to testify that the medical care did not comply with the applicable standard of care." N.C.G.S. § 1A-1, Rule 9(j) (2009). Two days after filing the complaint, plaintiff filed a "Motion for 9 J Extension," requesting a "120 day extension on filing a 9 J statement." Plaintiff based this motion on the provision in Rule 9(j) granting trial courts the discretion to extend the statute of limitations for a 120-day period to allow a plaintiff to file a medical malpractice complaint. On 2 June 2006, the trial court granted plaintiff's motion for a 120-day extension and made it retroactive to 29 March 2006.

Thereafter, on 11 July 2006, plaintiff filed an amended complaint, through counsel, naming the following parties as defendants: Kindred Nursing Centers East, L.L.C.; Kindred Healthcare Operating, Inc.; Kindred Healthcare, Inc.; Patricia Evelyn Dix, N.P.; Steven Ferguson, M.D.; and Eastern Carolina Family Practice, P.A. On 9 November 2006, the trial court dismissed with prejudice plaintiff's claims against defendants Kindred Nursing Centers East, L.L.C., Kindred Healthcare Operating, Inc., and Kindred Healthcare, Inc. The remaining defendants, Patricia Evelyn Dix, Steven Ferguson, and Eastern Carolina Family Practice, filed a motion on 18 September 2007 to dismiss the complaint for, among other things, failure to comply with the special pleading requirements of Rule 9(j). On 7 March 2008, the trial court allowed defendants' motion and dismissed plaintiff's complaint with prejudice. Plaintiff appealed to the Court of Appeals.

On 5 May 2009, a divided panel of the Court of Appeals reversed the trial court's order dismissing plaintiff's complaint. *Brown v. Kindred Nursing Ctrs. E., L.L.C.*, 196 N.C. App. ——, 675 S.E.2d 687 (2009). The Court of Appeals concluded that plaintiff corrected his defective complaint by filing an amended complaint with the requi-

site expert certification during the 120-day extension granted by the trial court. *Id.* at ——, 675 S.E.2d at 691. The dissenting judge argued that the trial court properly dismissed plaintiff's complaint since the medical care at issue had not been reviewed by an expert before plaintiff filed his original complaint. *Id.* at ——, 675 S.E.2d at 692-93 (Elmore, J., dissenting). Defendants now appeal to this Court as of right based on the dissenting opinion at the Court of Appeals. This Court also allowed defendants' petition for discretionary review as to additional issues on 27 August 2009.

## ANALYSIS

The statute of limitations for "[a]ctions for damages on account of the death of a person caused by the wrongful act, neglect or fault of another" is two years from the date of death. N.C.G.S. § 1-53(4) (2009). Because plaintiff's father died on 3 April 2004, the statute of limitations, absent a valid extension, expired on 3 April 2006. In granting plaintiff's "Motion for 9 J Extension," the trial court attempted to extend the statute of limitations 120 days from 29 March 2006, the date on which plaintiff filed his original complaint. Thus, the question presented by this case is whether the trial court issued a valid extension of the statute of limitations under Rule 9(j).

The leading case addressing amended complaints and the statute of limitations under Rule 9(j) is *Thigpen v. Ngo*, 355 N.C. 198, 558 S.E.2d 162. In *Thigpen*, the plaintiff filed a complaint lacking an expert certification during a 120-day extension of the statute of limitations. *Id.* at 199-200, 558 S.E.2d at 164. After the 120-day extension expired, the plaintiff filed an amended complaint that included an expert certification. *Id.* at 200, 558 S.E.2d at 164. This Court held that the trial court properly dismissed the plaintiff's complaint for two reasons: (1) "[O]nce a party receives and exhausts the 120-day extension of time in order to comply with Rule 9(j)'s expert certification requirement, the party cannot amend a medical malpractice complaint to include expert certification"; and (2) "Rule 9(j) expert review must take place before the filing of the complaint." *Id.* at 205, 558 S.E.2d at 167.

Though similar in many respects, there are slight variations in the procedural posture underlying *Thigpen* and the present case. In *Thigpen* the plaintiff filed a motion for a 120-day extension of the statute of limitations before filing an initial complaint. Furthermore, the plaintiff in *Thigpen* did not file a certified complaint until after the 120-day extension had expired. Despite these procedural differ-

ences, both cases challenge the extent to which Rule 9(j) allows a party to amend a deficient medical malpractice complaint.

To resolve this question in the medical malpractice context, the specific policy objectives embodied in Rule 9(j) must be considered. As we explained in *Thigpen*, "[t]he legislature's intent was to provide a more specialized and stringent procedure for plaintiffs in medical malpractice claims through Rule 9(j)'s requirement of expert certification prior to the filing of a complaint." *Id.* at 203-04, 558 S.E.2d at 166. To lessen the additional burden of this special procedure, the legislature permitted trial courts to extend the statute of limitations "for a period not to exceed 120 days to file a complaint in a medical malpractice action in order to comply with this Rule." N.C.G.S. § 1A-1, Rule 9(j). This Court's holding in *Thigpen* maintained the balance struck by the legislature between ensuring access to the courts for resolution of medical malpractice claims and protecting health care providers from potentially frivolous suits.

With this legislative background in mind, we now turn to an analysis of the present case. Here, plaintiff filed a complaint five days before the statute of limitations expired and then moved for an extension to file a "9 J statement." However, Rule 9(j) only permits an extension of the statute of limitations "to file a complaint." Despite the wording of plaintiff's motion, Rule 9(j) makes no mention of a "9 J statement" or any other document outside of a complaint that can be submitted to demonstrate expert certification.

Furthermore, plaintiff's sole reason for requesting an extension of the statute of limitations is inconsistent with the General Assembly's purpose behind enacting Rule 9(j). Here, plaintiff did not move for a 120-day extension to locate a certifying expert before filing his complaint. Rather, plaintiff alleged malpractice first and then sought to secure a certifying expert. This is the exact course of conduct the legislature sought to avoid in enacting Rule 9(j). "[P]ermitting amendment of a complaint to add the expert certification where the expert review occurred after the suit was filed would conflict directly with the clear intent of the legislature." *Thigpen*, 355 N.C. at 204, 558 S.E.2d at 166.

In addition to using the 120-day extension of the statute of limitations to locate a certifying expert, plaintiff added new defendants to the lawsuit during this period. In fact, two of the three remaining defendants, Patricia Evelyn Dix and her employer Eastern Carolina Family Practice, P.A., were first included as defendants in the

BROWN v. KINDRED NURSING CTRS. E., L.L.C.

[364 N.C. 76 (2010)]

amended complaint. Because Dix and her employer were not named in the initial complaint, plaintiff argues that proper certification attached to the only complaint filed against these two defendants. As such, plaintiff contends the trial court should not have dismissed the amended complaint with respect to Dix and Eastern Carolina Family Practice since Rule 9(j) certification attached to the "original complaint (or first pleading) that alleged medical malpractice by Defendant Dix." This argument is flawed for four reasons.

First, while it may be true that the amended complaint named Dix and her employer as defendants for the first time, the amended complaint challenged the same medical care as the original complaint. According to Rule 9(j)(1), the complaint "shall be dismissed" unless "[t]he pleading specifically asserts that the *medical care* has been reviewed by a person who is reasonably expected to qualify as an expert witness." (Emphasis added.) Rather than questioning whether certification occurred before plaintiff added individual defendants to the suit, the rule requires us to determine whether certification occurred before plaintiff challenged the overall medical care at issue. Litigants cannot circumvent the requirements of Rule 9(j) by adding new names to the same claims. Even though plaintiff included Dix and her employer as defendants for the first time in the amended complaint, the trial court properly dismissed the amended complaint with respect to all remaining defendants since the same medical care was at issue as that alleged in the original complaint.

Second, plaintiff did not file the amended complaint alleging malpractice against Dix and her employer until 11 July 2006, well after the two-year statute of limitations had expired on 3 April 2006. Although plaintiff requested a 120-day extension on 31 March 2006, this request was made two days after he filed the original complaint. As already discussed, the trial court had no authority to extend the statute of limitations in order for plaintiff to file a "9 J statement." Therefore, since Rule 9(j) provided no grounds for an extension of the statute of limitations, plaintiff did not file a timely complaint against Dix and her employer.

Third, assuming *arguendo* that plaintiff could amend his complaint to comply with Rule 9(j) after the two-year statute of limitations expired, the inclusion of Dix and her employer in the amended complaint would not relate back to the filing of the original complaint. Under Rule 15(c) of the North Carolina Rules of Civil Procedure, a claim against new parties does not relate back to the original complaint. *See Crossman v. Moore*, 341 N.C. 185, 187, 459

S.E.2d 715, 717 (1995). Thus, plaintiff's complaint against Dix and her employer is untimely under Rule 15(c), as well as under Rule 9(j).

Fourth, even if we were to conclude that the trial court had the statutory authority to grant plaintiff an extra 120 days to file a "9 J statement," this is not what plaintiff did. Rather than simply notifying the trial court that he had located an expert willing to testify in support of his medical malpractice allegations, plaintiff amended the complaint and added new defendants. The record does not demonstrate that plaintiff ever received specific permission from the trial court to file an amended complaint that named new parties. Thus, in addition to requesting an extension of the statute of limitations inconsistent with the procedure set out in Rule 9(j), plaintiff also lacked a basis for filing suit against Dix and her employer after expiration of the two-year statute of limitations.

Although plaintiff could not amend his complaint outside the limitations period, he nevertheless maintained an alternate path to the courtroom. In *Brisson v. Santoriello* this Court concluded that Rule 9(j) does not prevent parties from voluntarily dismissing a nonconforming complaint and filing a new complaint with proper certification. 351 N.C. 589, 593, 528 S.E.2d 568, 570 (2000). Unlike filing and later amending a defective complaint, dismissal has "the effect of leaving defendant exactly where he was prior to the filing of plaintiff's complaint—free from the taint of wrongful accusation or legal detriment." *Augur v. Augur*, 356 N.C. 582, 590, 573 S.E.2d 125, 131 (2002) (citations omitted). This procedural distinction is also consistent with the language of Rule 9(j), which specifically states that a nonconforming complaint "shall be dismissed"—not that it "shall be dismissed or amended." As stated in *Thigpen*, "we find the inclusion of 'shall be dismissed' in Rule 9(j) to be more than simply a choice of grammatical construction." 355 N.C. at 202, 558 S.E.2d at 165 (citation and internal quotation marks omitted). Under *Brisson*, by noticing a defect in the original complaint and voluntarily dismissing it, a plaintiff has acted consistently with the statute and can then refile the complaint in accordance with Rule 41 of the North Carolina Rules of Civil Procedure. Here, plaintiff attempted to amend his complaint under Rule 15 rather than voluntarily dismissing it and then refiling it with the proper Rule 9(j) certification and consistently with Rule 41.

Moreover, in *Brisson* the plaintiffs had complied with every portion of Rule 9(j) except for including the certification in the complaint. In fact, the plaintiffs in *Brisson* noted in a motion to amend

**BROWN v. KINDRED NURSING CTRS. E., L.L.C.**

[364 N.C. 76 (2010)]

filed with the trial court before they took a voluntary dismissal that "a physician has reviewed the subject medical care, but it was inadvertently omitted from the pleading." 351 N.C. at 592, 528 S.E.2d at 569 (quotation marks omitted). In this case plaintiff specifically admitted in his "Motion for 9 J Extension" that he had been unable to find a physician willing to testify on his behalf before the filing of the complaint, stating that "doctors in this area while privately saying that there is clearly evidence of medical malpractice are reluctant to say so on the record." Rule 9(j) requires that the review be made not only by an expert, but by an expert who is "willing to testify." N.C.G.S. § 1A-1, Rule 9(j). In *Thigpen*, this Court noted that no evidence or statement demonstrated that the required 9(j) review occurred before the filing of the complaint, and "[a]llowing a plaintiff to file a medical malpractice complaint and to then wait until after the filing to have the allegations reviewed by an expert would pervert the purpose of Rule 9(j)." 355 N.C. at 204, 558 S.E.2d at 166-67. In the case *sub judice* plaintiff not only failed to allege that the case had been reviewed before the filing of the complaint by an expert willing to testify, but he specifically stated that such review had not taken place. Therefore, the reasoning in *Thigpen*, rather than *Brisson*, is controlling.

We find it instructive that the legislature has made no changes to Rule 9(j) in the eight years since this Court's ruling in *Thigpen*. "The legislature's inactivity in the face of the Court's repeated pronouncements" on an issue "can only be interpreted as acquiescence by, and implicit approval from, that body." *Rowan Cty. Bd. of Educ. v. U.S. Gypsum Co.*, 332 N.C. 1, 9, 418 S.E.2d 648, 654 (1992) (citations omitted). Such legislative acquiescence is especially persuasive on issues of statutory interpretation. When the legislature chooses not to amend a statutory provision that has received a specific interpretation, we assume lawmakers are satisfied with that interpretation. *Wells v. Consol. Jud'l Ret. Sys. of N.C.*, 354 N.C. 313, 319, 553 S.E.2d 877, 881 (2001). Here, the legislature has made no indication that our holding in *Thigpen* should be altered. Therefore, Rule 9(j) should receive the same interpretation today that this Court gave it eight years ago. *See, e.g., State v. Jones*, 358 N.C. 473, 484, 598 S.E.2d 125, 132 (2004) (concluding that because the General Assembly had not amended a criminal statute to convert possession of cocaine to a misdemeanor, "it is clear that the legislature has acquiesced in the practice of classifying the offense of possession of cocaine as a felony").

Although we recognize plaintiff initiated this medical malpractice action as a *pro se* litigant, it is well settled that "the rules [of civil procedure] must be applied equally to all parties to a lawsuit, without regard to whether they are represented by counsel." *Goins v. Puleo*, 350 N.C. 277, 281, 512 S.E.2d 748, 751 (1999) (stating that "the Rules of Civil Procedure promote the orderly and uniform administration of justice, and all litigants are entitled to rely on them"). This Court articulated many years ago its duty to enforce rules of procedure uniformly and explained: "When litigants resort to the judiciary for the settlement of their disputes, they are invoking a public agency, and they should not forget that rules of procedure are necessary, and must be observed . . . ." *Pruitt v. Wood*, 199 N.C. 788, 790, 156 S.E. 126, 127 (1930) (citation omitted); *see also McNabb v. United States*, 318 U.S. 332, 347 (1943) ("The history of liberty has largely been the history of observance of procedural safeguards."); *State v. Fennell*, 307 N.C. 258, 263, 297 S.E.2d 393, 396 (1982) (explaining that the rules of appellate procedure are "mandatory and not merely directory").

Plaintiff's procedural errors in the present case require us to reaffirm the holding of *Thigpen*. "Allowing a plaintiff to file a medical malpractice complaint and to then wait until after the filing to have the allegations reviewed by an expert would pervert the purpose of Rule 9(j)." *Thigpen*, 355 N.C. at 204, 558 S.E.2d at 166-67.

## CONCLUSION

In sum, given the plain language of Rule 9(j) and our prior holding in *Thigpen*, plaintiff failed to file a valid medical malpractice complaint against defendants before the statute of limitations expired. Even though the limitations period can be extended for 120 days under Rule 9(j), this extension is for the limited purpose of filing a complaint. There is no language in Rule 9(j) that indicates this time period can also be used, as plaintiff did here, to locate a certifying expert, add new defendants, and amend a defective pleading. Because plaintiff failed to follow the special pleading requirements dictated by the General Assembly for medical malpractice actions, Rule 9(j) mandates that his complaint "shall be dismissed." Because of our holding, we need not address the other issues or arguments raised by the parties. Accordingly, we reverse the Court of Appeals and reinstate the trial court's order dismissing plaintiff's complaint.

REVERSED.

Justice HUDSON dissenting.

Because I do not agree that *Thigpen v. Ngo*, 355 N.C. 198, 558 S.E.2d 162 (2002), controls here and because the majority opinion demonstrates a fundamental misunderstanding of both the plain language of North Carolina Rule of Civil Procedure 9(j) (Rule 9(j)), which allows for an extension of the statute of limitations in a medical malpractice case, and the plain language of North Carolina Rule of Civil Procedure 15(a) (Rule 15(a)), which allows a plaintiff to amend his complaint as a matter of course and without leave of the trial court before the filing of a "responsive pleading" by a defendant, I respectfully dissent.

This is a medical malpractice case, initially filed by the plaintiff *pro se*, on 29 March 2006, alleging that negligence and medical malpractice caused the death of his father on 3 April 2004. The applicable statute of limitations provides that "[a]ctions for damages on account of the death of a person caused by the wrongful act, neglect or fault of another" must be brought within two years from the date of the person's death. N.C.G.S. § 1-53(4) (2009). Under section 1-53(4), the statute of limitations would not have run on plaintiff's claims on account of the death of his father until 3 April 2006. Until that time, plaintiff could have filed suit naming any and all persons and entities and alleging any and all claims he believed had merit.

Rule 9(j) contains the special provisions which are at issue here and which state, in pertinent part:

Upon motion by the complainant prior to the expiration of the applicable statute of limitations, a resident judge of the superior court . . . may allow a motion to extend the statute of limitations for a period not to exceed 120 days to file a complaint in a medical malpractice action in order to comply with this Rule, upon a determination that good cause exists for the granting of the motion and that the ends of justice would be served by an extension.

*Id.* § 1A-1, Rule 9(j) (2009). Rule 9(j) also contains an expert certification requirement, which states that the complaint "shall be dismissed" unless it specifically alleges that "the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence . . . who is willing to testify that the medical care did not comply with the applicable standard of care" or "has been reviewed by a person that the

complainant will seek to have qualified as an expert witness . . . under Rule 702(e) . . . who is willing to testify that the medical care did not comply with the applicable standard of care." *Id.*, Rule 9(j)(1), (2). Significantly, Rule 9(j) contains no language addressing when the expert must conduct the review of the medical care. Further, Rule 9(j) does not require that the expert certification be contained in the original complaint, nor does it address in any way the existing Rules of Civil Procedure regarding amendments to pleadings, such as Rule 15(a).

Plaintiff filed his complaint *pro se* on 29 March 2006, and on 31 March 2006, before the expiration of the statute of limitations, he filed a "Motion for 9 J Extension." On 31 May 2006, a superior court judge allowed the motion for the 120-day extension, "retroactive to March 29, 2006." By entry of this order, the trial judge extended the statute of limitations for 120 days from 29 March 2006 until 27 July 2006.[1] Before the expiration of that period, plaintiff acquired counsel and filed: (1) a motion noting that, with the exception of defendant Kindred Nursing Centers East, L.L.C.,[2] none of the other original defendants had answered plaintiff's original 29 March 2006 *pro se* complaint, and consequently, "leave of Court is not required for purposes of filing" his amended complaint as to those defendants; and (2) an amended complaint adding two new parties defendant, Patricia Dix, N.P. and Eastern Carolina Family Practice, P.A. ("ECFP"). On 18 September 2007, defendants Patricia Dix, N.P., ECFP, and Steven Ferguson, M.D., who was named in plaintiff's original *pro se* complaint, moved to dismiss plaintiff's complaint. On 10 March 2008, the trial court entered an order allowing their motion to dismiss "pursuant to Rules 9(j), 12(b)(6), and 41 of the North Carolina Rules of Civil Procedure" and dismissed plaintiff's complaint with prejudice.

A majority of the Court of Appeals reversed the trial court, because plaintiff "sought and received a Rule 9(j) extension and filed his amended complaint complying with Rule 9(j) within the extended limitations period." *Brown v. Kindred Nursing Ctrs. E., L.L.C.*, 196 N.C. App. ——, ——, 675 S.E.2d 687, 689 (2009). The majority in the

---

1. In effect, the trial judge extended the statute of limitations for 116 days from 3 April 2006 until 27 July 2006. This action complies with the plain language of Rule 9(j) allowing a superior court judge "to extend the statute of limitations for a period not to exceed 120 days."

2. In November 2006 plaintiff voluntarily dismissed Kindred Nursing Centers, East, L.L.C., Kindred Healthcare Operating, Inc., and Kindred Healthcare, Inc., who therefore are not involved in this appeal.

Court of Appeals went on to explain that "[o]rdinarily, the issue with an amended [complaint]" filed *after* the statute of limitations has expired "is whether the amendment[s] 'relate[] back' " to a time *before* the statute of limitations expired. *Id.* at ——, 675 S.E.2d at 690-91. However, the court noted that because both the original and amended complaint were filed before the expiration of the extended statute of limitations, the "relation back" doctrine does not apply and that issue is not involved here. *Id.* at ——, 675 S.E.2d at 691. The dissenting opinion would have affirmed the dismissal based on *Thigpen*, which the dissenter maintained requires that the medical care be reviewed by an expert before the plaintiff files the original complaint in order to comply with Rule 9(j). *Id.* at ——, 675 S.E.2d at 692 (Elmore, J., dissenting).

Here the majority concludes that plaintiff did not receive a valid extension under Rule 9(j) because: (1) plaintiff titled his *pro se* request for an extension of the statute of limitations under Rule 9(j) as a "Motion for 9 J Extension" and the trial court's order extending the statute of limitations merely states that it "grants Plaintiff's motion for a 120 day extension for filing a 9 J statement"; and (2) plaintiff's sole reason for requesting the extension—to locate an expert who was willing to testify on the record as to the standard of care—"is inconsistent with the General Assembly's purpose behind enacting Rule 9(j)." I believe plaintiff did obtain a valid extension of the statute of limitations from 3 April 2006 until 27 July 2006 under Rule 9(j).

Rule 9(j) allows a superior court judge to extend the statute of limitations for a period of up to 120 days for a plaintiff "to file a complaint in a medical malpractice action in order to comply with this Rule." N.C.G.S. § 1A-1, Rule 9(j). In essence, when plaintiff filed his *pro se* motion requesting an extension of time to obtain and include a Rule 9(j) certification, typically included in the complaint, he was requesting time to file a complaint that complied with Rule 9(j). Despite the imprecise language, it appears that plaintiff's *pro se* motion could only mean that he was seeking additional time to file a complaint that complied with Rule 9(j). Thus, by extending the statute of limitations so that plaintiff could file a Rule 9(j) certification, the trial court was extending the time in which plaintiff could file a complaint. Nothing in Rule 9(j) indicates that, by enacting that rule, the legislature intended to prevent a plaintiff in a medical malpractice case from filing an original complaint before requesting a Rule 9(j) extension to locate a certifying expert who will testify on

the record. In fact, Rule 9(j)'s plain language speaks of "a" complaint, not an original or initial complaint. *Id.*

Rather than being based upon the plain language of Rule 9(j), the majority's interpretation here originates from dictum in this Court's opinion in *Thigpen*, to the effect that "[p]ermitting amendment of a complaint to add the expert certification where the expert review occurred after the suit was filed would conflict directly with the clear intent of the legislature." 355 N.C. at 204, 558 S.E.2d at 166. However, *Thigpen* is procedurally and factually distinguishable from this case in several material ways that lead me to conclude *Thigpen* does not control.

Here plaintiff filed the original, defective complaint before the statute of limitations ran, obtained a valid extension of the statute of limitations under Rule 9(j), and filed an amended complaint that complied with Rule 9(j) within the extended limitations period. In *Thigpen*, the plaintiff requested and obtained a valid extension of the statute of limitations under Rule 9(j) before filing any complaint. *Id.* at 199, 558 S.E.2d at 163-64. Then, she filed the original complaint lacking a Rule 9(j) certification after the original statute ran, but within the extended limitations period. *Id.* at 200, 558 S.E.2d at 164. She then sought to file an amended complaint containing a Rule 9(j) certification after the extended limitations period had passed. *Id.* Significantly, in *Thigpen* we held:

> In sum, based on this record, we hold that once a party receives *and exhausts* the 120-day extension of time in order to comply with Rule 9(j)'s expert certification requirement, the party cannot amend a medical malpractice complaint to include expert certification. Further, we hold that Rule 9(j) expert review must take place before the filing of the complaint.

355 N.C. at 205, 558 S.E.2d at 167 (emphasis added). In contrast to *Thigpen*, plaintiff here filed a complaint that complied with Rule 9(j)'s expert certification requirement before exhausting the extended limitations period. Furthermore, the expert review occurred before plaintiff filed the amended complaint, following a course of action that is not addressed by our holding in *Thigpen*.

The fact that the plaintiff in *Thigpen* filed the amended complaint after the expiration of the extended limitations period, not within it as plaintiff did here, is a critical distinction. This is because amendments to a complaint made after the statute of limitations has

expired, as occurred in *Thigpen*, necessarily invoke the "relation back" analysis, contained in N.C.G.S. § 1A-1, Rule 15(c), whereas the complaint here does not. In contrast, here plaintiff's ability to amend his complaint was subject to Rule 15(a), which states, in pertinent part: .

> (a) *Amendments.*—A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 30 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party[.]

N.C.G.S. § 1A-1, Rule 15(a) (2009). Under Rule 15(a), with the exception of Kindred Nursing Centers East, L.L.C., plaintiff did not need leave of court to amend his complaint because none of the other defendants had filed an answer to plaintiff's original complaint. *See, e.g., Pierce v. Johnson*, 154 N.C. App. 34, 37, 571 S.E.2d 661, 663 (2002) ("Rule 15(a) of the North Carolina Rules of Civil Procedure allows a party to 'amend his pleadings once as a matter of course at any time before a responsive pleading is served.' Rule 7 of the North Carolina Rules of Civil Procedure identifies all of the pleadings that are allowed in a civil case and makes it clear that motions and other papers are not considered pleadings. Therefore, threshold motions under Rule 12 and dispositive motions under other rules are not responsive pleadings that prevent an amendment without leave of court under Rule 15(a)." (citing N.C.G.S. § 1A-1, Rules 7, 15(a) (2001); *Johnson v. Bollinger*, 86 N.C. App. 1, 7, 356 S.E.2d 378, 382 (1987); 1 G. Gray Wilson, *North Carolina Civil Procedure*, § 15-2, at 292 (2d ed. 1995))). This Court has noted:

> The date of the filing of the motion, rather than the date the court rules on it, is the crucial date in measuring the period of limitations. The timely filing of the motion to amend, if later allowed, is sufficient to start the action within the period of limitations. Plaintiff's amendment was therefore not barred by the statute of limitations, and whether it would "relate back" to the filing of the original complaint was immaterial.

*Mauney v. Morris*, 316 N.C. 67, 71-72, 340 S.E.2d 397, 400 (1986). Plaintiff's amended complaint here has the effect of simply superseding his original complaint. *See Hughes v. Anchor Enters., Inc.*, 245 N.C. 131, 135, 95 S.E.2d 577, 581 (1956) (citation omitted).

Even if *Thigpen* does control, for this Court to require that the medical care be reviewed before the filing of the original complaint is not only a legislative act, but one that runs exactly contrary to the plain meaning of 9(j). Rule 9(j) permits the plaintiff to file a motion before the expiration of the statute of limitations which, if allowed, can extend the statute of limitations for up to 120 days "in order to comply with this Rule." To say that plaintiff has to have complied with the Rule before the extension period renders the extension meaningless. Such a conclusion would mean that, in order to get an extension of the statute of limitations "to comply with" the Rule, plaintiff would have to not need the extension.

Finally, the majority's approach would completely undercut the purpose of the 120-day extension permitted under Rule 9(j). The majority here even recognizes that the legislature created the 120-day extension in order to "lessen the additional burden" of the more "stringent procedure" now required in medical malpractice claims. The Court of Appeals recognized this as well. *Brown*, 196 N.C. App. at ——, 675 S.E.2d at 691 (majority). Requiring plaintiff to have had the review completed before the extension period would do the opposite. I do not believe that this is logical or consistent with the intent of the legislature. I would affirm the Court of Appeals, and thus, I respectfully dissent.

Chief Justice PARKER and Justice TIMMONS-GOODSON join in this dissenting opinion.